**William Azubuike ETUGH, Petitioner,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 90–3240.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Oct. 12, 1990.

Decided Oct. 15, 1990.

V. Pinnock Bailey, II, Philadelphia, Pa., for petitioner.

Mark C. Walters, Alice M. Smith, Richard M. Evans, and Carl H. McIntyre, Jr., U.S. Dept. of Justice, Office of Immigration Litigation, Washington, D.C., for respondent.

Before GREENBERG, HUTCHINSON and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

The Board of Immigration Appeals ("Board") dismissed petitioner's motion to reopen his deportation proceedings because petitioner failed to establish prima facie that he was eligible for political asylum or that deportation should be withheld under sections 208 and 243(h) of the Immigration and Nationality Act ("Act"), 8 U.S.C. §§ 1158 and 1253(h), respectively. We have jurisdiction pursuant to section 106(a) of the Act, 8 U.S.C. § 1105a(a). We will deny the petition for review because we agree with the Board that petitioner failed to make a prima facie case when he alleged that persecution awaiting him in Nigeria was localized, not national in scope.

I.

Petitioner William Azubuike Etugh, a citizen of Nigeria, first entered the U.S. as a nonimmigrant visitor. He was charged with illegally remaining longer in the U.S. than permitted. An immigration judge found Etugh deportable, but granted him the privilege of departing voluntarily on or before May 31, 1987. Instead, Etugh moved to reopen his deportation proceedings in order to apply for political asylum and to request that the Attorney General withhold deportation. Etugh alleged he could not safely return to Nigeria because he was "a prime target for assassination" and his "children ... have been kidnapped" due to "serious inter-tribal rivalries and hostilities" resulting from Etugh's inheritance of "a key parcel of land" from his late father. Etugh alleged to be threatened by factional fighting between his own townspeople, who dwell in Akirika, and townspeople of nearby Abala. He claimed that although the Nigerian federal government opposed the threatening Abala faction, the federal government was extremely weak in the vicinity, whereas local authorities supported the Abala who threatened Etugh's safety and children. Etugh also alleged his older brother had been shot and killed under similar circumstances in 1981.

Etugh supported his allegations with a letter from his brother in Nigeria. The letter related "big fighting" between Etugh's hometown and enemy factions. The brother's letter warned Etugh to stay away "until everything is over", because the Abala people "want to see you" and "they will kill you". Etugh's brother also wrote that he would send Etugh's children to a friend in Lagos, the capital city of Nigeria, where Etugh should go to find them "and take them ... to [the] U.S."

The Immigration Judge denied Etugh's Motion to Reopen saying:

a prima facie case of eligibility for the relief sought has not been established

...

\*    \*    \*    \*    \*    \*

[Etugh's] bare assertions for asylum are, unsupported. Additionally, the Motion gives *no* believable basis for any alleged kidnapping of [Etugh's] children and persecution of him if he returns to Nigeria. Further, [Etugh] is not required to return to any alleged unsafe area in Nigeria....

Quoting from *Matter of Acosta*, I.D. 2986 (1984), the IJ noted that to qualify as a refugee, an alien must do more than show a well-founded fear of persecution in a particular place or abode within a country; he must show that the threat of persecution exists for him country wide.

Etugh filed a timely appeal with the Board and submitted three letters from Nigeria supporting his application for asylum. One of these letters indicated the Abala people invaded Etugh's hometown of Akirika. In the invasion three men were killed, five children (including two of Etugh's) were kidnapped, and Akirika villagers were scattered to places remote from the local fighting. The other two letters described similar circumstances.

The Board dismissed Etugh's appeal by concluding Etugh failed to make a prima facie showing of the well-founded fear or clear probability of persecution required for asylum and withholding of deportation. The Board reasoned Etugh failed to establish prima facie eligibility for asylum and withholding of deportation because (1) "[t]he events in Akirika as set forth in the documents provided by [Etugh] are confused and inconsistent" App. p. 29; (2) "the motive for the actions of the Abala people is unclear.... [and] it has not been shown that their actions are related to the race, religion, nationality, membership in a particular social group, or political opinion of [Etugh] or anyone else in Akirika" App. p. 29; and (3) Etugh "has not established that he would be unable to live safely in Nigeria outside of Akirika". App. p. 30. With respect to this last finding, the Board noted that when deported Etugh would not be required to return to the village where he resided. The Board's decision was a final denial of Etugh's motion to reopen to apply for relief under sections 208 and 243(h) of the Act.

Etugh filed a timely petition asking that we review the Board's decision. In his petition, Etugh contends he satisfied his burden of establishing a prima facie case for asylum, and so the Board both abused its discretion by denying his motion to reopen and violated his constitutional rights.

## II.

The standard for reviewing the Board's decision is not settled. The Board may properly deny a motion to reopen deportation proceedings if it decides the movant has not established a prima facie case for the underlying substantive relief sought. *I.N.S. v. Abudu*, 485 U.S. 94, 108 S.Ct. 904, 911, 99 L.Ed.2d 90 (1988). Although neither we nor the Supreme Court have decided the appropriate standard by which to review a Board's decision to deny a motion to reopen because the petitioner failed to state a prima facie case, other courts of appeal have. The Fourth Circuit Court of Appeals recently announced it will affirm a Board denial of reopening predicated on prima facie grounds *unless* the denial

> (1) was made without a rational explanation, (2) inexplicably departed from established policies, or (3) rested on an impermissible basis such as invidious discrimination against a particular race or group ... This standard is not difficult to satisfy: 'The [Board's] decision need only be reasoned, not convincing.' [citations omitted]

*M.A. v. U.S. I.N.S.*, 899 F.2d 304, 310 (4th Cir.1990).

Favoring plenary review, the Ninth Circuit Court of Appeals decided (but with dissenting views) in *Ghadessi v. I.N.S.*, 797 F.2d 804 (9th Cir.1986), that abuse of discretion is not the proper standard. That court said, although an abuse of discretion standard generally applies when the Board has denied reopening, if a denial is restricted to the issue of whether the movant established a prima facie case for the relief he seeks, appellate review "is limited to an evaluation of whether the [Board's] determination on the *prima facie* case showing was correct." *Id.* at 805, n. 2; also 806.

The *Ghadessi* majority reasoned that the Board does *not* exercise discretion when it evaluates a movant's allegations of a well-founded fear of persecution, and therefore, abuse of discretion is not the proper standard of review.

We need not decide which standard to adopt, because applying either we must affirm the Board's determination that Etugh failed to establish a prima facie case for asylum under section 208 of the Act, and *a fortiori*, for withholding of deportation under section 243(h) of the Act.

### III.

■ The essential elements of a prima facie case of a "well-founded fear of persecution", needed for asylum under section 208 of the Act, can only be given concrete meaning through a process of case-by-case adjudication. *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987). The Board's general standard is "that an applicant for asylum has established a well-founded fear if he shows that a reasonable person in his circumstances would fear persecution", *Matter of Mogharrabi*, Interim Dec. No. 3028, at 9 (BIA 1987).

■ Without expressing any opinion of the Board's general test for whether an applicant has established a well-founded fear, we conclude that in this case the Board correctly decided Etugh had not made out a prima facie case for asylum. Etugh failed to allege he would be persecuted beyond the local vicinity of his hometown, Akirika. Since deportation would not require Etugh to return to the purportedly dangerous region of Nigeria where he formerly lived, and because Etugh's affidavits indicate he is safe from the threatening Abala faction at least in Nigeria's capital, the Board correctly decided Etugh had not made a prima facie case for asylum under section 208. The scope of persecution Etugh alleges is not national and does not sustain his motion to reopen. *See Quintanilla–Ticas v. I.N.S.*, 783 F.2d 955, 957 (9th Cir.1986); *Diaz–Escobar v. I.N.S.*, 782 F.2d 1488, 1493 (9th Cir.1986).

Furthermore, even considering an additional affidavit accompanying Etugh's brief to this court, we believe the Board correctly found Etugh's allegations of events in Akirika, particularly the kidnapping of his children, "confused and inconsistent". The Board need not accept Etugh's allegations as true if they are "inherently unbelievable". *See Haftlang v. I.N.S.*, 790 F.2d 140, 144 (D.C.Cir.1986). The fundamental inconsistencies in Etugh's allegations were legitimate reasons for the Board to decide Etugh had not made a prima facie case for asylum. The Board implicitly found some of Etugh's allegations inherently unbelievable when it said with reference to Etugh's inconsistent accounts of the kidnappings, "it does not appear that these discrepancies may be accounted for by repeated kidnappings and releases of the children".

Finally, the Board's conclusion that the motives of Etugh's persecutors remain "unclear" was reasonable. Etugh's allegations and affidavits do not clarify what prompts the Abala people to ravage Akirika and target Etugh for death. If the violence directed against Etugh is rooted in a property dispute only, then Etugh's status as either a "refugee" for purposes of asylum under section 208 of the Act, or as an alien entitled to withholding of deportation under section 243(h) of the Act, is questionable since both sections afford relief only to those who are threatened "on account of race, religion, nationality, membership in a particular social group, or political opinion". *See* section 243(h)(1); section 208 (referencing section 101(a)(42)(A)). Even if the affidavit filed with Etugh's brief to this court is evidence that the threat to him is religiously motivated, the local scope of that threat defeats his prima facie case for asylum.

### IV.

■ Because we agree with the Board's decision that Etugh failed to establish a prima facie case for the "well-founded fear of persecution" required for relief under section 208(a), we also agree that Etugh's allegations did not amount to a prima facie case for withholding of deportation under

section 243(h). Whereas a prima facie case under § 208(a) must show a "well-founded fear of persecution", withholding of deportation under § 243(h) requires the more difficult showing of a "clear probability of persecution". *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). Since Etugh failed to bear the lesser burden of alleging a "well-founded fear of persecution", he also has failed to allege a "clear probability of persecution" in Nigeria.

## V.

■ By our decision on review, we preclude a further hearing on Etugh's asylum application. This, however, does not violate Etugh's constitutional right of Due Process guaranteed by the Fifth Amendment. When an alien has made a motion to reopen his deportation proceedings to obtain discretionary relief such as asylum under section 208, the Board clearly has discretion to deny the motion to reopen, even if the alien has made out a prima facie case for relief. *Abudu*, 108 S.Ct. at 912; *I.N.S. v. Jong Ha Wang*, 450 U.S. 139, 144, n. 5, 101 S.Ct. 1027, 1030–31, n. 5, 67 L.Ed.2d 123 (1981). *See* 8 C.F.R. § 3.2. If the Board chooses to exercise its discretionary power to deny reopening after a movant establishes a prima facie case for asylum, due process does not require an asylum hearing.

*A fortiori* where, as here, a petitioner does not even make a prima facie case for asylum, Board denial of his motion to reopen is justified and necessarily precludes a subsequent asylum hearing, but this does not deny the petitioner due process.

## VI.

For the foregoing reasons, this petition for review is denied and the decision of the Board of Immigration Appeals is affirmed.