**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CESAR AMILCAR LOPEZ,
Petitioner,

v.

No. 97-1369

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A70-684-022)

Argued: September 22, 1998

Decided: October 29, 1998

Before WILKINS and MICHAEL, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Patricia Mary Spicer, PAULSON, NACE & NORWIND,
Washington, D.C., for Petitioner. Ernesto Horacio Molina, II, Office
of Immigration Litigation, Civil Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.
**ON BRIEF:** Frank W. Hunger, Assistant Attorney General, Brenda
E. Ellison, Senior Litigation Counsel, Office of Immigration Litiga-
tion, Civil Division, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Cesar Amilcar Lopez petitions for review of an order of the Board of Immigration Appeals (BIA) dismissing his appeal from a decision of an immigration judge denying his application for asylum and withholding of deportation. Because substantial evidence supports the BIA's decision, we affirm.

I.

An alien qualifies for asylum if he "is unable or unwilling to return to his native country `because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" M.A. v. INS, 899 F.2d 304, 307 (4th Cir. 1990) (en banc) (quoting 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998)). The "well-founded fear of persecution" standard contains both a subjective and an objective component. See Figeroa v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The subjective element requires a genuine fear on the part of the alien, while the objective element requires credible, specific, and direct evidence supporting a reasonable fear that the alien faces persecution. See id. Moreover, the threat of persecution must not be limited to a particular place within a country; it must exist country-wide. See Etugh v. INS, 921 F.2d 36, 39 (3d Cir. 1990).

The standard for withholding of deportation is more stringent than that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987). To qualify for withholding of deportation, an applicant must "demonstrate a clear probability of persecution." Id. at 430 (internal quotation marks omitted).

II.

We must uphold the decision of the BIA determining that Lopez is not qualified for asylum unless the evidence compels the conclu-

2

sion that he has a well-founded fear of persecution for any of the bases enumerated in the statute. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Lopez argues that the evidence in the record compels that conclusion. We disagree.

The evidence presented at the hearing before the immigration judge established that in November 1986, the Guatemalan Army conscripted Lopez and trained him as an artillery specialist. One month prior to Lopez's discharge, guerrillas attacked his unit and stole documents containing his name and address as well as the names and addresses of four other soldiers.

In September 1989, following Lopez's discharge, Marco Escobar contacted Lopez and informed him that the guerrillas wanted Lopez, Escobar, and other veterans to present themselves before the guerrillas. Believing himself to be in danger, Lopez moved to another region of Guatemala, where he lived for three months without incident. Lopez then moved to the Department of Peten, where he lived for one year without incident. Lopez testified that the guerrillas in Peten were a different group than the guerrillas he feared. Lopez also testified that while in Peten, he learned from his family that the guerrillas had killed Escobar. Lopez subsequently left the country, ultimately entering the United States. Lopez also testified that the guerrillas tended to operate in remote areas of Guatemala and are far less active in cities such as Guatemala City. And, regarding the guerrillas' motive for locating him, Lopez conceded that the guerrillas may have wanted him for his military skills.

We conclude that substantial evidence supports the BIA's finding that Lopez does not have a well-founded fear of persecution for any of the bases enumerated in § 1101: race, religion, nationality, membership in a particular social group, or political opinion. Lopez failed to establish that the guerrillas wanted him for any reason other than his military skills. Further, the evidence established that Lopez was able to live in different areas of Guatemala without incident. Thus, Lopez failed to establish a country-wide threat of persecution.

Because Lopez fails to establish entitlement to asylum, he cannot meet the higher standard for withholding of deportation. Accordingly, we affirm the order of the BIA.

AFFIRMED

3